IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TAMMY HATCHETT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 3:06-cv-00152-TFM |
| | )     [wo] |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, Tammy Hatchett ("Hatchett") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. Because the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

## I. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Hatchett, age 42 at the time of the hearing, has an eleventh grade education. Hatchett was trained as a certified nurse's assistant and has not engaged in substantial gainful work activity since 2003. The ALJ determined that Hatchett suffered from obesity, diabetes mellitus type II, hypertension, chronic obstructive lung disease, neuropathy, retinopathy, anxiety disorder, and status post polysubstance abuse. The ALJ concluded that each impairment was "severe" within the meaning of the Act, but found that they did not meet or equal in severity any impairment listed in

20 C.F.R. Part 404, Appendix 1 to Subpart P.  The ALJ found that Hatchett's allegations of pain and functional limitations were not credible, and that Hatchett retained the residual functional capacity ("RFC") to perform the exertional demands of light work, with nonexertional limitations set forth in his findings.  Hatchett's RFC would permit her to perform her past relevant work as a waitress and daycare worker.  Accordingly, the ALJ concluded that Hatchett is not disabled.[1]

### III.  ISSUES

Hatchett specifies four issues for this judicial review:[2]

1. The ALJ erred in his finding that Hatchett's anxiety disorder imposes only mild to moderate limitations on her ability to perform work activity on a regular and continuing basis.

2. The ALJ erred by failing to give controlling weight or great weight to the treating physician's opinions about Hatchett's diagnoses, the nature of her impairments, and limitations imposed by her impairments.

3. The ALJ erred as a matter of law in finding that Hatchett has the residual functional capacity to perform a reduced range of light work.

4. The ALJ failed to identify as a "severe" impairment Carpal Tunnel Syndrome and failed to differentiate hypertensive retinopathy and diabetic retinopathy in his listing of "severe impairments."

---

[1] R. 17, 22-23.  The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

[2] *See* Plaintiff's Brief in Support of Complaint ("*Pl.'s Br.*") at 2 (Doc. 14, filed June 22, 2006) *and* Order filed February 23, 2006 (Doc. 4)(directing Plaintiff to a brief in support of her claim(s) and to include in her brief a section titled "Statement of the Issues" which "shall state in a concise, and specific manner each issue which the plaintiff presents to the court for resolution").

## IV.   DISCUSSION[3]

**A.     The Record Supports The ALJ's Finding That Plaintiff Can Resume Her Past Relevant Work Activity On A Regular And Continuing Basis, And That She Retains The Ability To Perform A Reduced Range of Light Work.**

Hatchett raises two claims which relate to her psychological and physical capability for work. She first claims reversible error in the ALJ's determination that her anxiety disorder imposes only mild to moderate limitations on her ability to perform work activity on a regular and continuing basis. She argues the finding is not supported by substantial evidence, and that it was contrary to law and applicable regulations.[4] Secondly, Hatchett asserts that the ALJ erred as a matter of law by finding that she had the residual functional capacity to perform a reduced range of light work. Regarding the first claim, the Commissioner responded that the medical opinion relied upon by Hatchett was based solely on her own subjective statement that she suffered from anxiety, and was not supported by other observations noted in the psychological report.[5] On the issue of whether Hatchett was able to perform a reduced range of light work, the Commissioner argued that medical records did not support her claims of deficiencies in gross and fine manipulation.   The court finds that the ALJ determination should be upheld.

   **1.** *The Record Does Not Support A Finding That Hatchett Is Unable To Work Due To*

---

[3]This Opinion combines Plaintiff's Issues 1 and 3 for discussion purposes.

[4]*Pl.'s Br.* at 9-12.

[5]Memorandum in Support of the Commissioner's Decision ("*Def.'s Br.*") at 6 (Doc. 15, filed July 17, 2006).

*Anxiety Disorder.*

Hatchett's argument that the ALJ erred in his assessment of her anxiety disorder relies upon the psychological evaluation performed by Lee Stutts, Ph.D. ("Stutts"), who examined her at the request of the Disability Determination Service (DDS) on July 7, 2003. Hatchett told Stutts that her "number one thing is diabetes," but also that she was "nervous a lot."[6] In fact, Stutt's clinical findings reflected that Hatchett was calm.[7] Stutts' findings incorporated Hatchett's own representations that she was "unable to work due to her anxiety symptoms" and "neuropathy secondary to diabetes."[8] However, his own assessment was that Hatchett appeared "cognitively capable of managing her own affairs and would likely be able to learn and complete simple job chores but psychologically might struggle," that she currently could not withstand "normal work pressures," and suggested regular psychiatric treatment so Hatchett could return to work. [9]

Stutts' report was used by Kenneth Warren, Ph.D. ("Warren") in a Psychiatric Review Technique Form regarding Hatchett on July 29, 2003. Warren noted that Hatchett "doesn't like people," and a report from her mother that confusion results when her blood sugar gets too high. Warren determined that Hatchett's allegations of mood swings and social disorder were partially credible, as they were the likely result of uncontrolled diabetes.[10] Warren also noted Stutts' findings that Hatchett would require regular psychiatric treatment in order to withstand normal work

---

[6]R. at 211.

[7]R. at 212.

[8]R. at 213.

[9]R. at 213.

[10]R. at 227-28.

pressures, but discounted this finding because it was not task specific and inconsistent with Stutts' own examination of Hatchett. These findings led Warren to conclude that Hatchett would have some restrictions, but not to the severity which she alleged.[11]

While Warren concluded that several of Hatchett's work-related skills were "not significantly limited," he did find that she was moderately limited in the ability to understand, remember, and carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to respond appropriately to changes in the work setting.[12] These findings were the basis for Warren's recommendation that Hatchett could work in a setting with minimal interaction with the public, and that change in her work setting should be infrequent, or carefully introduced in a way that did not aggravate her anxiety.[13]

Hatchett contends that Stutts' findings should have carried greater weight in the ALJ's determinations because he examined her, in contrast with Warren's assessment of her ability to work through record review. Hatchett asserts that the ALJ's decision was inconsistent with the general practice of according greater weight to the examining physician, and controlling regulations at 20 C.F.R. § 416.927(d)(3) (explaining that non-examining sources will be accorded weight according to the "degree to which they provide supporting explanations for their opinions"). However, a close

---

[11]R. at 228.

[12]R. at 229-31.

[13]R. at 232.

6

review of the record shows that the ALJ's decision was not an outright rejection of Stutts' findings, but resulted from a lack of objective medical evidence which supported Hatchett's claim of extreme functional restrictions.[14]  Indeed, the ALJ gave some weight to Stutts' opinion on Hatchett's functional abilities, including his opinion that she could learn and complete simple job chores.[15]  He also found that Hatchett's testimony about her functional restrictions during her administrative hearing was "disproportionate to the objective medical evidence."[16]

Social security regulations require an ALJ evaluating medical opinion evidence to consider a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question.  *See* 20 C.F.R. § 404.1527(d)(1)-(6).  Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists.  *See* § 404.1527(d)(1), (2) & (5). When assessing medical evidence, an "ALJ [is] required to state with particularity the weight [given] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir.1987) (per curiam).

In this case, the ALJ acknowledged the credibility of Stutts' opinion as to Hatchett's functional abilities, and adopted his conclusions regarding her ability to learn and complete simple job chores in tandem with Warren's opinion that she could resume her past relevant work as a

---

[14]R. at 22.

[15]R. at 22.

[16]R. at 22.

waitress or daycare worker. These are both occupations which generally involve the type of simple chores advocated by Stutts. The opinion of Warren, a non-examining physician, was supported by supporting explanations, in accordance with 20 C.F. R. § 416.927(d)(3).[17] Hatchett's position that the ALJ improperly dismissed Stutts' examining opinion regarding the severity of her anxiety disorder is not borne out by the record.

### 2. *The Record Supports A Finding That Hatchett Is Capable Of Performing A Reduced Range of Light Work.*

In contesting the ALJ's findings as to her ability to perform a reduced range of light work, Hatchett submits that the ALJ's findings are not supported by substantial evidence. She argues that the opinion from a consultative examination was improperly given more credence than the opinion of her treating physician. The Eleventh Circuit ruled in *Phillips v. Barnhart*, 357 F.3d 1232 (11th Cir. 2004) that a treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips, id.* at 1240-41. "Good cause" is present where the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.,* citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The ALJ noted that the consulting opinion from Dr. Slavich was supported by "clinical examinations and testing" that was "generally consistent with the record as a whole." These tests did not show any significant impairment that prevented Hatchett's performance of work-related activities such as sitting, standing, walking, lifting, carrying, or handling objects, hearing, speaking,

---

[17] R. at 227-28.

or traveling.[18]  On the other hand, the opinion from treating physician Dr. Galishoff regarding Hatchett's inability to balance, walk, or see was not accompanied by any objective findings.[19]  The ALJ noted the lack of supporting medical evidence for Dr. Galishoff's opinion, and justified discounting his conclusions under *Phillips*.

> **B.    The ALJ Did Not Err By Failing To Give The Treating Physician's Opinions A Controlling Weight In His Findings**

Hatchett's second argument is that the ALJ did not give controlling weight to the opinions of her treating physician, and that this contravened both the established law of this circuit and applicable federal regulations.  After a recitation of the indisputably severe impairments found by the ALJ, and two additional alleged impairments, *i.e.*, carpal tunnel syndrome and depression, Hatchett faulted the ALJ's finding that the severity of her impairments was not supported by objective medical records submitted by Dr. Galishoff.[20]  She specifically claims that the ALJ did not follow the regulatory criteria for weighing medical opinions.  *See* 20 C.F.R. § 416.927(d)(1)-(6).  The Commissioner responds that the ALJ demonstrated "good cause" for assigning less weight to Dr. Galishoff's opinion under *Phillips v. Barnhart*, *id.*  The Court finds that the ALJ stated a basis for his decision to give lesser weight to the treating physician's opinion in this case, and that the record supports his decision. After finding that Hatchett's "testimony of disabling pain and functional restrictions [was] disproportionate to the objective medical evidence," the ALJ noted that the

---

[18]R. at 22

[19]R. at 234

[20]*Pl.'s Br.* at 12-13.

"record [did] not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged." Specifically, the ALJ explained that there were "no diagnostic studies to show abnormalities that could be expected to produce such severe symptoms, and "little evidence of medical treatment" in the months preceding the alleged onset of disability.[21] These findings satisfy the *Phillips* criteria, and are supported by the record.  The absence of diagnostic results that are consistent with Hatchett's claims is indeed striking. Dr. Galishoff's notes show that in October, 2002, approximately six months prior to Hatchett's alleged onset of disability, he regarded her blood sugar as "way out of control," that the unsafe sugar levels were primarily a problem of dietary compliance, and that there were no other major problems at the time.[22] Notes from an examination by Dr. Slavich in July of 2003 also listed uncontrolled diabetes as Hatchett's chief complaint, along with her lack of dietary compliance.[23]  In October, 2004, Dr. Galishoff wrote that he saw no hope of Hatchett's improving due to complications from diabetes, and that she should not operate any type of machinery due to her "inability to feel the controls" and poor vision.[24] In March of 2005, Dr. Galishoff termed Hatchett "quite disabled" not from diabetes, but from pulmonary disease and arthritis. The doctor added that Hatchett "may have" carpal tunnel syndrome, and that she did not see how she would be able to work 40 hours a week at any type of

---

[21]R. at 22.

[22]R. at 186.

[23]R. at 209.

[24]R. at 234.

job if she has carpal tunnel and neuropathy . . . ."[25]  However, despite such dire predictions concerning her health during this timeframe, Hatchett continued to drive on a regular basis and told the ALJ that she was not on any special diet or exercise program for diabetic persons.[26]  In documents dated August, 2005, which were submitted to the Appeals Council after Hatchett's administrative hearing, Dr. Galishoff alternatively advised that Hatchett was unable to engage in gainful employment due to "multiple medical problems," and that her diabetes was "under wonderful control."[27]  After examining Hatchett on August 29, 2005, Dr. Galishoff discontinued several medications for her treatment.[28]

Due to the inconsistencies between Dr. Galishoff's records and pronouncements of Hatchett's disability, the court finds that the record fully supports the ALJ's decision to assign partial credibility to his opinion.  Further, Dr. Galishoff's opinion that Hatchett could not work is a legal conclusion, as opposed to an objective medical finding to be weighed in a disability determination. *See Lewis*, 125 F.3d at 1440 .

### C. Hatchett Did Not Establish That She Was Impaired By Severe Carpal Tunnel Syndrome Or Retinopathy.

Hatchett's claims that the ALJ erred by rejecting Dr. Galishoff's opinion that she "may have" superimposed Carpal Tunnel Syndrome.  The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled.  20 C.F.R. § 404.1512; *Jones v.*

---

[25] R. at 245.

[26] R. at 38-39, 40.

[27] R. at 266, 263.

[28] R. at 265.

*Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). Dr. Galishoff wrote that Hatchett "may have" carpal tunnel syndrome.[29] This clearly conditional expression does not establish the existence of an actual medical condition, and therefore cannot establish disability based on that condition. Hatchett failed to meet her burden of proof, and the ALJ cannot have erred by failing to find her disabled due to Carpal Tunnel Syndrome.

Finally, Hatchett asserts that, in setting forth her severe impairments, the ALJ did not differentiate between retinopathy due to hypertension or diabetes. The purpose of administrative review is to determine disability. Whatever the cause of Hatchett's retinopathy, the condition itself was not disabling. As noted by the United States, Hatchett did not provide any legal basis for her claim that the condition be classified by the ALJ.

## V.   CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**   A separate judgment is entered herewith.

Done this 18th  day of January, 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

---

[29]R. at 245.